UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CITY OF JACKSONVILLE, et al.,

       Plaintiffs,

vs.                                Case No.  3:10-cv-211-J-32MCR

ARRIGATO, INC.,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Default Judgment (Doc. 18) filed October 14, 2010.  Defendant failed to file a response, and the time for doing so has passed.  The Court, having considered the Motion and affidavits attached thereto, the Complaint (Doc. 1) and exhibits thereto (Doc. 3), and being otherwise advised in the premises, recommends Plaintiffs' Motion be granted.

## I.   BACKGROUND

Plaintiffs, the City of Jacksonville and SMG (the City's management company and agent), filed a Complaint in this Court on March 9, 2010 (Doc. 1) alleging breach of contract and conversion.  Plaintiffs allege they entered into a licensing agreement (the "Agreement") with Defendant, Arrigato, Inc., whereby Defendant was permitted to act as

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

the sole vendor of souvenir merchandise for the annual football game between the University of Florida and the University of Georgia at the Jacksonville Municipal Stadium (the "Stadium") on November 1, 2008. (Doc. 1). The Agreement gave Defendant an exclusive license to make, sell, and distribute souvenir merchandise from both universities at the Stadium. (Doc. 3, Ex. 2). Additionally, the Agreement gave Defendant an exclusive license to operate multiple concession stands both inside and outside the Stadium. Id. In return, pursuant to the Agreement, Defendant was obligated to pay royalties on merchandise sales to the City of Jacksonville in an amount equal to 35% of gross sales (less applicable state sales tax), but in no event less than $25,000.00. Id. This payment was due no later than ten (10) days after the game. Id. When no payment had been received as of August 24, 2009, the City sent a letter terminating Defendant's license to operate as a vendor at any future games and demanded payment within thirty (30) days. (Doc. 1). As Defendant failed to pay, Plaintiffs filed the instant litigation on March 9, 2010.

Plaintiffs served the Complaint upon Defendant's registered Corporation Secretary (Doc. 6) and then, obtained an alias summons so as to serve Defendant through the Florida Secretary of State as well (Doc. 9). When Defendant did not appear in this case, Plaintiffs moved for a Clerk's Entry of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 13). The Court denied this motion without prejudice as it appeared Plaintiffs failed to comply with the requirements of Florida Statute §48.161 for substituted service. (Doc. 14). Subsequently, Plaintiffs filed a renewed motion for a Clerk's Entry of Default (Doc. 15) in which they corrected the

original deficiency by forwarding via certified mail, a notice of the substituted service

and process to Defendant.  The Court granted the renewed motion and the Clerk

entered a default on September 16, 2010.  (Docs. 16 and 17).

## II.   ANALYSIS

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter final

default judgment against a defaulting party, however, it is well-established that "a

defendant's default does not in itself warrant the court entering a default judgment."

Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

Rather, the Court must find "a sufficient basis in the pleadings for the judgment

entered."  Id.  A default judgment has the effect of establishing as fact the plaintiff's well-

pleaded allegations of fact, and bars the defendant from contesting those facts on

appeal.  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987) (citing Nishimatsu,

515 F.2d at 1206)).  Accordingly, in ruling on the motion for default judgment, the Court

must examine in further detail Defendant's liability under the causes of action alleged in

the Complaint.

### A.   Liability

As an initial matter, the parties agreed that Florida law would govern the

Agreement and the Agreement was to be performed primarily in the state of Florida.

Therefore, the Court will apply Florida law to the instant matter.  Forzley v. AVCO Corp.

Electronics Div., 826 F.2d 974, 979 (11th Cir. 1987) ("The law chosen in the contract

---

[2]  In the case of Bonner v. Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

itself will be applied so long as there is a reasonable relationship between the contract and the state whose law is selected . . .").  Plaintiffs asserted two claims against Defendant: breach of contract and conversion.  In the instant Motion, Plaintiffs only seek default judgment on the breach of contract claim and therefore, the Court will limit its examination of the Complaint to Count I.

"Under Florida law, the elements for a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages."  J.J. Gumberg Co. v. Janis Services, Inc., 847 So.2d 1048, 1049 (Fla. 4th DCA 2003).  Upon review of the Complaint, the Motion, and the attached affidavit, the undersigned finds Plaintiffs have sufficiently alleged all required elements for a breach of contract claim.  Specifically, Plaintiffs have alleged they had a valid contract with Defendant, that Defendant breached the contract by failing to pay the royalties, and that Plaintiffs have incurred damages as a result of the breach.  (Doc. 1, ¶¶ 19-22).  These facts, which have been established by virtue of Defendant's default, are enough to establish Defendant's liability for breach of contract.

**B.   Damages**

Having found Plaintiffs entitled to a default judgment on their breach of contract claim, the undersigned turns to the question of damages.  "As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits."  Directv, Inc. v. Huynh, 318 F.Supp.2d 1122, 1129 (M.D. Ala. 2004) (citing Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985) and Directv, Inc. v. Griffin, 290

F.Supp.2d 1340, 1343 (M.D. Fla. 2003)).  In this case, to support their claim for

damages, Plaintiffs have provided a detailed affidavit as well as a copy of an email from

Defendant in which Defendant claimed it generated gross sales of $153,291.00, which

would result in royalties of $50,141.92.  (Doc. 18, Ex. A).  While Plaintiffs suggest that

Defendant's actual sales were much higher, and possibly in excess of $350,000.00,

Plaintiffs acknowledge that the only concrete evidence they have of the sales is the

email from Defendant and therefore, they ask for judgment in the amount of $50,141.92.

As this amount is supported by a detailed affidavit and is based upon a number

provided by Defendant, the Court finds no hearing is necessary to calculate damages

and believes Plaintiffs are entitled to $50,141.92 from Defendant for breach of the

Agreement.

### C.    Attorneys' fees and costs

In addition to their damages, Plaintiffs note that the Agreement provided

attorney's fees and costs to the prevailing party in any legal action arising out of the

Agreement.  Plaintiffs seek $14,485.50 in attorneys' fees[3] and $358.75 in costs.  (Doc.

18, ¶12).

In the Eleventh Circuit, attorneys' fees are calculated under a "lodestar" formula

by multiplying the number of hours reasonably expended by a reasonable hourly rate.

Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  The Florida Supreme Court

---

[3] Approximately ten (10) hours of this award is for work counsel for Plaintiffs expects to perform in the future.  (Doc. 18, Ex. B, ¶10). The undersigned was unable to find and Plaintiffs did not cite any authority for the award of prospective attorneys' fees and therefore, the undersigned does not recommend the recovery of such fees.

has also adopted the lodestar approach for the computation of reasonable attorney's fees.  See Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985).  An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing Blum v. Stenson, 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 1547 n. 11 (1984)).  A reasonable number of hours spent should exclude those hours which are excessive, redundant, or otherwise unnecessary.  Id. at 1301 (citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933 (1983)).  As the Eleventh Circuit noted:

> "the court . . . is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."

Id. at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

Plaintiffs attached detailed billing records to the instant Motion.  These records indicate three attorneys and one paralegal from the Office of the General Counsel, City of Jacksonville, worked a total of 110.9 hours on the case from March 2009 through September 2010.  (Doc. 18, Ex. B).  The three attorneys' time was billed at a rate of $130.00 to $160.00 per hour for 91.6 hours, and the paralegal time was billed at a rate of $45.00 for a total of 19.3 hours.  Id.

The undersigned finds the hourly rates charged were reasonable given the skill, experience, and reputation of Plaintiffs' attorneys and paralegal and the prevailing market rates for this type of legal work.  From a review of the time sheets submitted, the

undersigned finds the number of hours billed by each attorney and paralegal is not

excessive, however, the Court is concerned about there being some redundancy in the

charges by attorneys Twane Duckworth and Carol Mirando.  For example, it appears

Mr. Duckworth spent 11.5 hours preparing the complaint and it appears Ms. Mirando

spent 11.2 hours also preparing the complaint.  The complaint in this case is not

particularly complex and would not require over twenty hours of attorney time.

Therefore, as it appears Ms. Mirando was the lead attorney on this case, the Court

recommends permitting recovery of her time spent preparing the complaint, but

recommends the time spent doing the same by Mr. Duckworth (11.5 hours at an hourly

rate of $130.00 or $1,495.00) be disallowed.  Additionally, Mr. Duckworth spent 8.8

hours working on the default motions and Ms. Mirando spent 12 hours doing the same.

Again, this redundancy does not appear reasonable to the Court and therefore, the

undersigned again recommends denial of recovery for the time spent by Mr. Duckworth

working on the default motions (8.8 hours at an hourly rate of $130.00 or $1,144.00).

Other than the redundancy issues, the number of hours Plaintiffs' attorneys spent

were hours reasonably expended on this matter and the hourly rates billed were also

reasonable.  Therefore, under the Eleventh Circuit's lodestar calculation, Plaintiffs

should be granted an award of attorneys' fees as follows: $26.00 for 0.2 hours of work

performed by attorney Twane L. Duckworth; $848.00 for 5.3 hours of work performed by

attorney Ernst D. Mueller; $4,004.00 for 30.8 hours of work in 2009 and $4,725.00 for

35 hours of work in 2010[4] performed by attorney Carol Mirando; and $868.50 for 19.3 hours of work performed by paralegal Heather Dugan.  This totals $10,471.50.  Plaintiffs are also entitled to their costs pursuant to the Agreement and therefore, the judgment should include $350 for the filing fee and $8.75 for service of process.

Accordingly, after due consideration, it is

**RECOMMENDED**:

Plaintiffs' Motion for Default Judgment (Doc. 18) be **GRANTED** and the Clerk be directed to enter final judgment in Plaintiffs' favor in the total amount of $60,972.17, which sum should bear interest at the usual and lawful rate for federal court judgments.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this __18th__ day of November, 2010.

*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Timothy J. Corrigan,
    United States District Judge,

Counsel of Record

Arrigato, Inc.
d/b/a Craton Events & Concessions,
c/o Charles T. Craton, III,
P.O. Box 1366, Rome, GA 30165.

---

[4] Ms. Mirando's hourly rate increased from $130 to $135 in 2010.